## Case No. 10,347.

NORTH WISCONSIN RY. CO. v. BARRON COUNTY.

[8 Biss. 414.] [1]

Circuit Court, W. D. Wisconsin. Feb., 1879.

LAND GRANTS — PATENTS — TITLE — TRUSTS — TAXATION.

1. Under a government land grant to a railway company, the patents for the land were to be issued, pro tanto, on the completion of any twenty consecutive miles of road, and it was provided in the grant that the lands thereby granted should, when patented, be subject to the disposal of the company, for the purposes of construction and equipment and no other: *Held*, that this did not create the relation of trustee and cestui que trust, between the railroad company and the government as to lands so patented, but that the patents when issued vested the complete title in the company.

2. Such lands upon the issuing of the patents become subject to taxation.

3. It seems that the remedy of the government in case of misapplication of such lands, or their proceeds, would be by proceedings against the company or its officers, and that the titles of purchasers or mortgagees of the lands could not be affected.

In equity. Motion for temporary injunction to stay collection of tax, etc.

Isaac C. Sloan, S. U. Pinney, and J. C. Spooner, for complainant.

Vilas & Bryant, for defendant.

BUNN, District Judge. The complainant's counsel to sustain their application for an injunctional order restraining the collection of the taxes upon the railway company's lands, have pressed with great and persistent force the argument, that these lands are held by the company in trust for the building of the road which the company by the acceptance of the grant from the state has undertaken to construct. And though it may be difficult to answer satisfactorily the complainant's argument, I must say that the court is not convinced by it that the lands are exempt from the ordinary burdens of taxation incident to land in general.

If the lands are held in trust for the government, then I think there is no escape from the conclusion that they cannot be taxed, for I cannot see, in such a case, that it makes any difference whether the United States hold the legal title or hold the beneficial interest, the legal title remaining in the company which holds it as trustee for a certain purpose. In either case the land could not be taxed by the state. But I think the true and only answer

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

to the complainant's argument is that the lands are not held in trust either for the United States or for the state. The law, by force of which the exemption is claimed, is found in sections 7 and 8 of the act of congress of May 5, 1864 [13 Stat. 66], which are as follows:

"Sec. 7. That whenever the companies to which this grant is made or to which the same may be transferred, shall have completed twenty consecutive miles of any portion of said railroads supplied with all necessary drains, culverts, viaducts, crossings, sidings, bridges, turn-outs, watering places, depots, equipments, furniture and all other appurtenances of a first class railroad, patents shall issue conveying the right and title to said lands to the said company entitled thereto, on each side of the road, so far as the same is completed, and coterminous with said completed section, not exceeding the amount aforesaid, and patents shall in like manner issue as each twenty miles of said road is completed: provided, however, that no patents shall issue for any of said lands unless there shall be presented to the secretary of the interior, a statement verified on oath or affirmation by the president of said company and certified by the governor of the state of Wisconsin, that such twenty miles have been completed in the manner required by this act, and setting forth with certainty the points where such twenty miles begin and where the same end, which oath shall be taken before a judge of a court of record of the United States.

"Sec. 8. That the lands hereby granted shall, when patented, as provided in section 7 of this act, be subject to the disposal of the companies respectively entitled thereto, for the purposes aforesaid and no other, and the said railroads be, and shall remain public highways for the use of the government of the United States, free from all toll or other charge, for the transportation of any property or troops of the United States."

My opinion is that this language should not and cannot be construed as creating the relation of trustee and beneficiary or cestui que trust between the railway company and the United States as to the lands conveyed by patent to the company under section 7.

If the railway company holds the lands as an ordinary trustee, it takes a bare legal title, the real beneficial interest still remaining in the government. But it seems to me this is not the necessary or fair construction of the language of the two sections.

It will be noticed that the construction, completion and full equipment of twenty consecutive miles of road by the company is a condition precedent to its right to a conveyance of any portion of the land, and that upon such completion and equipment the law gives the company a right to a conveyance of just such proportion of the entire grant as the distance completed bears to the entire line of road; and upon a similar completion of another like number of miles a further conveyance of a like proportion of the land granted. So that it is evident that the company before it is entitled to any conveyance of the land must in an important sense earn a right to the land by a performance of the necessary labor and an outlay of the necessary amount of money. And it seems to me that this condition being performed and the conveyance made the company takes something more than a bare legal title—that it takes the legal title coupled with the beneficial interest in the property; but the company being subject, of course, to all the conditions of the grant; one of which, in my judgment, is to faithfully apply the proceeds of the sales of the lands patented to the further construction of the road.

I trust I do not misapprehend the real question, which is, I take it, not so much whether the technical relation of trustee and beneficiary exists between the company and the government, as whether the government, as to the lands patented to the company, still retains a substantial and beneficial interest in the property, or whether that has gone with the legal title to the company which has earned it by a compliance pro tanto with the conditions of the grant. And the conclusion which I have come to is, that the government after the patent issues to the company has no longer any property interest, legal or equitable, in the land.

This, it seems to me, is the fair construction of the language, and best comports with the spirit and purpose of the act. The language of section 7 is, that "patents shall issue conveying the right and title to the said lands to the said company entitled thereto." The "right and title" to the lands includes the beneficial interest as well as the legal title, and is just what is ordinarily conveyed by a patent from the government or from the state.

Again, section 8 says: "The lands hereby granted shall, when patented, be subject to the disposal of the companies respectively entitled thereto, for the purposes aforesaid, and no other." It is upon this provision mainly that the claim for exemption is based. It is evident, however, that the exemption from taxation of so large a quantity of land for an indefinite period should not be sustained upon any doubtful construction of the statute. And the construction which finds in this language the creation of a trust in the ordinary legal sense, and which leaves the beneficial interest in the land, after the issuing of the patent to the company, in the United States, is, in my judgment, not only not at all necessary, but is not the result of a fair interpretation of the language used.

It seems to me what the language fairly means is this: That upon the conveyance by patent of the lands to the company upon its earning the right to such conveyance by the completion of the required section of road, the company has the absolute right to dis-

pose of the lands, either by sale or mortgage, for the purpose of raising money to prosecute the enterprise of building the remainder of the road, and for this purpose has all the power and right that any owner of land in his own right has to convey the entire interest, as well equitable as legal, to the purchaser, who takes a perfect and full title to the land discharged of any claim or interest which the state or United States had in it previous to the issuing of the patent. And that the company is then under firm and solemn obligation, by accepting the grant subject to all the conditions contained in the act of congress; to faithfully apply the proceeds of sales to the purposes aforesaid; that is to say, to the construction of the road according to the terms and conditions of the grant.

Just what is the extent of the remedy which the state or general government might have against the company in case of a misapplication or attempted misapplication of the funds arising from sales of lands, whether a suit in equity to restrain such misapplication, or a proceeding to take away the chartered privileges of the company, or both these with others, it is not necessary here to determine.

Probably both of these remedies might be resorted to, and in case of disobedience to the orders of the court, the officers and agents of the corporation so offending might be attached. It is enough to say that in the opinion of the court the remedy would be of some such personal character rather than one reaching to and affecting the title to the land after it should have been sold by the company and gone into the hands of purchasers who had paid full value for it.

The obligation on the part of the company to faithfully apply the proceeds of sales to the construction of the road, is of the same character as the one to keep the railroad forever open to the use of the government as a public highway, free from all toll or other charges, for the transportation of the property and troops of the United States. Both, in my judgment, are personal and corporate obligations, to be enforced as other obligations of like character, and do not confer a property interest in the land after it is sold to the company, or in the road itself when completed. The legislative and judicial powers are ample for the enforcement of these several obligations, and for the protection of the rights of the government growing out of them.

It was urged, on the argument by complainant's counsel, that a purchaser of the lands from the company would take with full knowledge of the law, and of the conditions upon which the title vested, and of the claim upon the land which the government would retain until the road should be completed. It is undoubtedly true that the purchaser would take with full notice of the law and of the company's title, but instead of this being an argument to sustain the complainant's position, I think it is one against it. Because the purpose of the grant being the construction of the road, and the means of carrying out that purpose being mainly the sale or mortgaging of the lands to raise the necessary funds, it is not to be supposed, without the clearest evidence, that congress would provide for the company's conveying an imperfect title or one which should be liable to be defeated by the subsequent misconduct of the officers of the corporation, or a failure on their part to comply with the conditions of the grant.

Of course, no sane business man would pay the full value for land on a purchase, or loan money upon a mortgage of the land, when he knew that his title was subject to be defeated by the subsequent acts or misconduct of persons, over whom he had no control, in misappropriating the proceeds of the sale or otherwise failing to comply with the law. If such were the law, no person would buy or part with money on a mortgage, and so the very object of the grant, which is the building of the road, would be defeated.

The purchaser could not be supposed to know what the secret intent of the officers of the corporation or their successors in office might be, and that intent even might be formed after the sale was made.

The law expressly provides that the land patented shall be subject to the disposal of the company, and it was undoubtedly intended that the sale or mortgaging of the lands patented for the purpose of raising money should constitute a part of the means by which the road was to be constructed.

I take it, then, to be clear that the purchaser or mortgagee for value would take a full and complete title. And this is entirely incompatible with the idea of the government having any beneficial interest or property right of any kind in the land. This same question was made in West Wisconsin Ry. Co. v. Board of Sup'rs, 35 Wis. 257, and the same view taken.

The application for a temporary injunction is denied. But in view of the importance of the question involved, the restraining order heretofore made may be modified, so as to apply only to proceedings on the taxes levied previous to the year 1877, and so as not to affect any re-levy or re-assessment under the state laws of any of the taxes heretofore levied. And so modified, such restraining order may stand until the beginning of the June term, 1879, to the end that the cause may be heard on bill and answer by a full bench.

At the December term, 1879, the same cause came on to be heard on the merits, upon bill and answer, before Judges Drummond and Bunn, and the same conclusion was reached, and the complainant's bill dismissed. [Case unreported.]